LITTLE
ROCK,
Jan'y 1839.

THORN
vs.
REED.

THOMAS THORN *against* JOHN H. REED.

ERROR *to Pulaski Circuit Court.*

Where there is irregularity in the proceedings of the justices in forcible entry and detainer under the Territorial Statute, the cause may be removed into the Circuit Court by *certiorari*, and there the proceedings set aside.

Such writ of certiorari may be issued by the clerk, upon the order of the Judge.

No bill of exceptions to any opinion or judgment of the justices, can be taken in an action of forcible entry and detainer before them.

The seventh section of the Territorial act concerning forcible entry and detainer, specifies two classes of cases of detainer, wholly distinct and independent, and the remedy applied to which is essentially different.

Where the defendant obtained possession "without force, by disseizin," he must have notice to quit; and the action of forcible detainer does not lie 'in such case, unless the plaintiff has a legal right to the possession.

The defendant may in such case traverse the plaintiff's right of possession;— and if he show that plaintiff's term has expired, or that he never had a lawful right to the possession, the action is barred.

The other class of cases is, where a tenant holds over, after the term for which the premises were let or demised to him has expired. In such a case the plaintiff is not required to show any title whatever, when as landlord he sues a tenant who holds over.

In such case he will recover if he show the possession to be his, though the *right* of possession may be in one person, and the right of property in another. His title is not in issue. The tenant is estopped from denying it.

Where, therefore, by a covenant between the parties, the defendant has bound himself to give up and surrender to the plaintiff the possession of the premises on a certain day, and he holds over, it is not competent for him, in an action of forcible detainer under the Territorial Statute, to prove that the plaintiff had but an estate *pue antre vie*, which had expired before the commencement of the suit.

Where an action of forcible entry and detainer is brought into the Circuit Court by certiorari, it cannot be remanded to the justices. The Justice's Court was dissolved after they had tried the cause.

This was an action of forcible entry and detanier. The suit was originally brought before two Justices of the Peace for the recovery of the possession of Lots No. 1 and 2, in block or square 31, in the City of Little Rock; wherein *Thomas Thorn* was plaintiff and *John H. Reed* defendant. On the trial before the Justices, the plaintiff, in order to support his action, introduced the following articles of agreement, signed by himself and defendant, bearing date the eighth day of August, 1837—"That whereas the said *Thomas Thorn* became purchaser at sheriff's sale on the 10th day of April, A. D. 1837, of all the right, title, interest, estate, and claim of John H. Cocke, in and to

lots of ground known, designated and numbered, on the plats of the City of Little Rock, as lots one and two in block or square No. thirty- one, together with the appurtenances; which said lots of ground were then, and now are in the possession of *John H. Reed,* under a verbal lease from the said John H. Cocke, made sometime in October, A. D. 1836, and to expire on the tenth day of October next succeeding: and further, that the said *Thorn* had previously instituted suit against said *Reed* for possession of said lots, and two Justices had been summoned thereon and disagreed, and that article was the result of an adjust- ment and compromise between the parties: and further, that each of said parties should pay one half of the costs of said prior suit: and fur- ther, that the said *Reed,* on or before the 10th day of October next, 1837, shall pay, &c. to the said *Thorn,* rent for the use and occupa- tion of said lots, up to the said 10th day of October, 1837, to be com- puted as to time, from the 10th of July, 1837: *and further, that upon said 10th day of October, said Reed would yield and surrender posses- sion of said lots to said Thorn; and the said Thorn guaranteed posses- sion thereof to said Reed during such term."*

This agreement, together with the proof of demand made in wri- ting for the delivery of possession by the plaintiff, and that the defend- ant was in the possession of the premises, constituted all the evidence relied on to establish the plaintiff's right of action. The defendant then offered in evidence the record of a deed, duly authenticated and executed by William E. Woodruff and wife to John J. P. Cocke, in- fant son of John H. Cocke, in the year 1828, conveying to said son an estate in fee simple to said lots; and offered to prove that the said John H. Cocke died on the 10th day of October, 1837, and that his estate in the lots which had vested in him by the death of his son, *was one of life only,* and on his death had passed to and vested in his daughter, the full sister and legal heir of his son, after the father's death. And also offered in evidence a certificate, signed and sealed by the constable of the City of Little Rock, setting forth that, on the sixth day of November, 1837, the said constable had sold to the said *Reed,* at the court house door in said city, according to the manner and form prescribed by law, the lots mentioned as aforesaid, for the sum of eleven dollars, the amount of taxes due thereupon the year 1837; and the defendant being the last and only bidder for said lots, became the purchaser; all of which evidence was excluded by the Justices' Court, and not permitted to go to the jury. To which opinion

BB

LITTLE
ROCK,
Jan'y 1839

THORN
vs.
REED

the defendant excepted, and his bill of exceptions was signed and sealed by the Justices, who tried the cause, and placed on the record; whereupon the jury found a verdict for the plaintiff, and the court pronounced judgment for the restitution of the premises, and awarded him a writ of restitution for the possession. The defendant then applied to the Circuit Court for a writ of certiorari to bring up a record into the said Circuit Court, there to have the judgment of the Justices set aside for irregularity in the proceedings. At the November term, 1838, the cause came on to be tried before the Circuit Court; and after the court had inspected the record, and examined the errors assigned, judgment was pronounced, reversing and setting aside the judgment and proceedings of the Justices' Court for irregularity; and remanding the cause to the Justices' Court with directions to be proceeded in according to law; and that the defendant recover of the plaintiff his costs by him in said suit expended. The plaintiff then moved to set aside the judgment of the Circuit Court, which motion was overruled. Whereupon the plaintiff sued out a writ of error, and now prosecutes the same in this court, to reverse the judgment of the Circuit Court.

HEMPSTEAD & WATKINS, for plaintiff in error:

The Justices acted properly in rejecting any evidence going to show that *Thorn's* title had expired, and his estate determined by the death of John H. Cocke. The action or proceeding of forcible entry and detainer, is for the recovery of the *possession* merely, and nothing more. It is a trial between the plaintiff and defendant, and no other person. A person entitled to the immediate possession may maintain forcible entry and detainer, against another who has clearly the right of property. The law does not allow the *owner* of the land to enter with strong hand: if he does, (*Dig. Ark. p.* 260, *and following,*) the occupant so deforced may have this proceeding, and the rightful owner is compelled to resort to his lawful remedy. This proceeding then determines nothing but the bare, naked right of possession between the parties to the proceeding, and in no way or manner affects or precludes any subsequent action of ejectment, for mere profits, or for use and occupation. Then, as between the plaintiff and defendant, *Reed* was absolutely estopped and precluded from disputing the right of *Thorn* to the possession, and no evidence could be adduced against him clearer or stronger than that of his own deed.—

LITTLE
ROCK;
Jan'y 1839

THORN
vs.
REED

*Supposing* the legal right to be in the heirs of John T. P. Cocke, after the death of his father, John H. Cocke, their right could not be prejudiced by this decision between *Thorn* and *Reed.* If *Thorn* wrongfully, by decision, obtained possession of property to which he head no title, he could not only be turned out by ejectment, for instance, but would be liable for the mesne profits. Every case which can be adduced, going to show that the tenant in possession, having no title in himself, may show title in a third person, other than one plaintiff, applies to actions of ejectment, and not to proceedings of this nature. True, indeed, the action of ejectment involves the right of possession, but it involves something more: from its nature and object, it involves the right of property. A verdict in ejectment is held to be a bar to a subsequent action between the same parties and their privies, about the same subject matter, whether the parties, plaintiff or defendant, are reversed upon the record or not. Not so in this proceeding. But what could it have availed *Reed* to show title in the heirs of John T. P. Cocke? He was not their tenant; he offered to produce no lease showing that he held under them, nor did he even affect to be their tenant at sufferance. A lawless occupant himself, how could he show title in those under whom he did not pretend to claim?

The Justices also acted properly in rejecting the evidence offered about the tax title. It is contended by the defendant that for *Thorn* to have recovered in this proceeding, he was bound to show that he had the *legal right to the possession;* and that, on the other hand, it was sufficient for *Reed* to offer to show that the legal right to the possession was in himself. Now it is a principle of common law, and common sense, that the tenant is bound to keep down the taxes.—*Woodfall's Land & Tenant.* *Reed* was still the tenant of *Thorn,* though he wrongfully held over; for at the time of this tax sale, he was in by that right, and by no other. Under our laws the officer may distrain and sell a specific real property for the taxes due thereon, and the presumption is, that the tenant in possession will pay them. Because he may have a claim over against the landlord for all lawful taxes he may pay, does not vary the state of case. At the old common law it was an offence of the gravest nature for the tenant to disclaim or set up title in himself, in opposition to that of his lord. But laying all that aside, admitting that the city corporation of Little Rock had the power to take away a vested right for a trifling and insufficient consideration, that the ordinance of the council was rightfully enacted, that

LITTLE ROCK, Jan'y 1839

THORN vs. REED

the proceedings under it, the assessment, the advertisement, the sale, were all strictly regular and legal, will not the court here take notice that under that same law or ordinance, the claimant could redeem, or at least save his rights, by tendering to the purchaser the amount of taxes and cost he had paid, with interest within one year from the day of sale? At the time of the trial before the Justices, it appears from the record, that year had not elapsed. What, then, was the nature of the title which *Reed* offered in evidence? It was not a deed, nor any evidence of legal title or right to the premises. It was nothing more than the constable's certificate of purchase. His right then was not only *barely equitable*, but *inchoate* and *imperfect;* because it was liable to be defeated at any time within the year. If *Reed* had not been in possession at the time of the tax sale, he could not by any possibility, in any action, have recovered possession before the year for redemption had elapsed, upon the bare evidence of such a certificate. That he was in possession at the time of sale does not vary the case, because he was in by his own wrongful act, and could acquire no rights thereby.

But there is a further reason why the Justices acted properly in rejecting *all* the evidence offered by the defendant, and that is, that it would have led, directly and indirectly, to an investigation and trial of the *title to real property*, which Justices are by Statute expressly prohibited from trying, and which can only be brought in question in the Circuit Court. The record does not show the evidence with which the plaintiff was prepared to rebut that offered by the defendant; but it shows enough to know that the character and tendency of the rejected evidence was to induce a trial and determination of the right of property, and not of the right of possession.

If, then, there is no irregularity in the process, no error in the proceedings of the two Justices, the Circuit Court hath erred in the giving the judgment of erroneous proceedings, and the argument of the case is here at an end.

But the judge of the Pulaski Circuit Court caused a writ of certiorari, with supersedeas, to be issued to the two justices. It was contended on the behalf of *Thorn* before the Circuit Court, that the writ of certiorari was not not rightfully issued in this case—that this case had not been rightfully and legally before the court there—and that the court there had no jurisdiction therein, or any authority to hear and determine the same. And we contend before this court that the

Circuit Court erred in overruling the motion on the part of *Thorn* to set aside the judgment upon those grounds.

LITTLE ROCK, Jan'y 1839
THORN *vs.* REED

Under our old Statute law, when writs of certiorari were allowed to a single justice of the peace, and to two justices, in the proceeding of forcible entry and detainer, they were in all respects similar to appeals, regulated in the same manner, and attended with the like results. But because it was at the option of a party to suffer the time to pass by for taking an appeal, and then harrass the opposite party with a certiorari, and to obviate the confusion attending two different remedies of the same nature and effect, the Legislature by act approved November 3, 1831, wholly abolished certioraris, and prohibited their being issued in any case by the clerks of the different Circuit Courts, and that same act went on to revise and remodel the system of appeals. Under the existing Statute laws, then, the writ in this case was not rightfully issued. *Pamphlet Acts*, 1831, *p.* 50.

But under our Constitution, the Circuit Courts exercise a superintending control over the County Courts, and over Justices of the Peace, and have power to issue all the necessary writs to carry into effect their general and specific powers. Under this clause of the Constitution, the question arises, can the Circuit Courts issue writs of certiorari, unless the mode is pointed out and regulated by Statute; and this question of grave and serious magnitude, if determined in the negative, will put an end to all further argument, in this branch of the case. And the refusal of *two* judges of the Supreme Court to grant a writ of error in the case of Moseley, was based upon the same ground, and clearly illustrates our position. Sec. 5, *Article* 6, *Const. Ark.*

If the writ of certiorari, in this case, was issued under this clause of the Constitution, then, in the absence of any statutory regulations, it must be tested by the same principles, and regulated by the same rules, that govern writs of certiorari at the common law. 6 *Bac. Abr. tit. Statute*, J. 383. What, then, is a certiorari? It is defined to be *an original writ, directed to the judges or officers of inferior courts, commanding them to return the records of a cause depending before them, to the end that the party may have the more sure and speedy justice.* 1 *Tidd. Prac.* 330.

First, the writ must issue to an inferior court. Under our Statute law, two Justices of the Peace could sit as examining courts and commit, hold to bail, or discharge in cases of felony. They had power, equally

LITTLE: with the judges of the Circuit Court, to grant the benefit of the insol-
ROCK,
Jan'y 1839, vent act; and also sit in the summary proceeding of forcible entry and
THORN detainer;—and in the proceeding of forcible entry and detainer, the
*vs.*
REED process is directed to the sheriff of the county. Now the question very·
properly arises, whether, in either case, two Justices of the Peace are
quo ad hoc, inferior to a Circuit Court.

Second, the writ must be directed to a court of *Record*, because at
common law, if the proceedings of inferior courts not recorded were
removed, it could only be done by another and a different writ.—
1 *Tidd's Prac.* 330, *J.* Now, our courts of Justices of the Peace are
not courts of record, as defined by the common law, and a court of
two Justices, in the summary proceeding of forcible entry and detain-
er, stands on precisely the same footing. A Justice of the Peace has
no clerk, no seal, and no continuance of office. When a Justice of
the Peace dies, his court dies with him; another Justice may or may
not be appointed, but it is not the same court. Neither does a Justice
of the Peace, or any number of Justices, as such, have power to fine
or imprison. Under the Constitution, "Justices of the Peace shall in
no case have jurisdiction to try and determine any criminal or penal
offence against the State; but may sit as examining courts, and com-
mit, discharge, or recognize to the court having jurisdiction, for fur-
ther trial, offenders against the peace. For the foregoing purposes,
they have power to issue process, &c., and also have power to bind to
keep the peace, or for good behavior." The power to fine or imprison
for contempt merely, an incident of every court, whether of record or
not, and without which no judicial tribunal could exist, is not of itself
a correct criterion to determine the character of a court in this respect.
And we ask the court here to observe, that the writ of certiorari under
our old Statute law, was a peculiar remedy, in the nature of an ap-
peal; and the Justice was thereby required to send up the *original
process*, and a *copy* of the judgment, &c. and the court could not set
aside the proceedings before the Justice for *irregularity* or *informality*,
appearing, and should examine into the merits of the case, and give
judgment as in other cases. Again—the writ of certiorari, at the
common law, is almost universally used to remove the records of crim-
inal or penal cases, and seldom or never of civil cases, except for the
inspection of the record, or to use it as matter of evidence.

But when this case was gotten into the Circuit Court, whether right-
fully or not, the Circuit Court took no proper action about it. The

LITTLE
ROCK,
Jan'y 1839

THORN
vs.
REED

Circuit Court did not set aside the proceedings of the Justices for irregularity, because no irregularity was alleged to appear. Nor did the Circuit Court proceed to hear and determine the case upon its merits, and *do sure and speedy justice between the parties*—but decided that there was *error* in the proceedings before the Justices, and ordered that the case be *remanded to the said Justices of the Peace, in order that such proceedings may be had thereon as the law might require.* Now, by what authority of common or Statute law, did the Circuit Court do this? To what court was the case remanded? The two Justices had long before separated, and their quasi court of brief duration had dissolved; for aught that had appeared, or any thing that court could judicially know, the said Justices were dead or removed from office; and from this nugatory and unauthorized judgment of the Circuit Court, it is manifest that the plaintiff in error hath suffered gross injustice, if in no other way than by the delay of justice. 1 *Tidd's Prac.* 349; 1 *Salk.* 352; 5 *Mod.* 177.

Upon the whole view of the case, it remaines to be enquired, what order the court here will take in it. If there was no error in the proceedings before the Justices, we pray that the writ of summary restitution awarded by them, and which hath been superseded and ever since lain dormant, may be revived and carried into immediate execution. But *if* there was error in the proceedings before the Justices, and the certiorari rightfully issued, we ask that the case be remanded with costs, to the Circuit Court, there to be heard and finally determined upon its merits.

FOWLER & PIKE, *contra:*

The distinction by the plaintiff's counsel attempted to be drawn between an action of ejectment, and one of forcible entry and detainer, has no foundation in law; and the consequences deduced would not follow, even if such a distinction could be drawn.

Both are mere *possessary* actions. The action of ejectment originally was considered a mere action of *trespass*, in which damages only could be recovered; but about the time of 7th *Edw.* IV, it was resolved by the judges that the unexpired term, as well as damages, might be recovered. 3rd *Thomas' Co. Lit.* 209, n. *L.*

A verdict in ejectment is *not* a bar to a subsequent action between the same parties. See *Adams on Eq.* 294—315, and cases cited *in notis,* 316.

And in case of repeated actions being vexatiously brought, the only remedy is by application to chancery for injunction.   1 P. Wm. 671.

The rule which permits the tenant to show that his landlord's title has expired, is well settled, nor is it confined, as the plaintiff's counsel suppose, to the action of ejectment.   "With the rule," it is said, "which forbids the tenant to deny the title of his landlord to make the demise under which he occupies, there is obviously nothing inconsistent in permitting him to show that that title has since determined. He is at liberty, in general, *in any action at law*, to show that the interest which the lessor had in the land at the commencement of the tenantcy, has since expired, whether by operation of law, by efflux of time, or by his own act."   *England, exd. Syhern* vs. *Slade*, 4 *T. R.* 682; *Doe* vs. *Ramsbotham*, 3 *M. L.* 5, 516; *Doe* vs. *Watson*, 2 *Stark.* 230; *Adams* 247; *Jackson* vs. *Davis*, 5 *Cowen*, 135; 5 *Conn. Rep.* 201.

It is a good plea in bar, to an action of *covenant*, for not repairing, that the plaintiff was seized only in right of his wife, for her life, and that she died before covenant broken; or that the lessor under whom the plaintiff claims as heir, was tenant for life only.   *Blake* vs. *Foster*, 8 *T. R.* 487; *Brudnell* vs. *Roberts*, 2 *Wils.* 143; *Doe* vs. *West*, 1 *Blackf.* 133.

In *Lon* vs. *Simms*, 9 *Wheat.* 515, it is decided that the tenant may always show the title to be out of his landlord, though he do not show it to be in himself.   See also *Adams*, 29.

That ejectment is a mere possessary action, see *Taylor ex dem. Atkyns* vs. *Horde et al.* 1 *Burr.* 119; *Beck* vs. *Phillips*, 5 *Burr.* 2830; 3 *Dallas*, 457; *Fronblesome* vs. *Estill*, 1 *Bibb*, 129; *Rice's heirs* vs. *Lowan*, 2 *Bibb*, 150; *Adams*, 28.

That in all actions for the *possession*, the defendant, being tenant, may show that plaintiff's title has expired, see *Swan* vs. *Wilson*, 1 *Marsh.* 99; *Comyn on Landlord and Tenant*, 521.

It was error, therefore, in the Justices to reject the evidence of *Thorn's* title having expired.

The plaintiff in error denies the right of the judge of the Circuit Court to issue a certiorari in this case, and concedes that the power of issuing such a writ was abolished by the act of November 3rd, 1831. By the act of 1813, concerning forcible entry and detainer, it is provided that "no appeal shall be allowed from the judgment of the Justices aforesaid: *Provided, nevertheless*, that the proceedings may be

removed by certiorari, into the court of common pleas, holden in <span style="float:right">LITTLE ROCK; Jan'y 1839</span> said county; and be there set aside for irregularity, if any such there be. By this act, a certiorari is made the *only* remedy. The act of 1831 simply takes from the *Clerks* the power of issuing such writs; and does not conflict with or repeal any part of the act of 1813. That act being in force, the Circuit Court rightly took and exercised jurisdiction in this case. And, as by the Statute, the only power given the court was to "set aside" the judgment of the Justices, the judgment of the Circuit Court is correct. It had no power to try the case *de novo*, on its merits. It was made by Statute, *quoad hoc*, a court of error; and whether the Justices are dead or not, is no question here; as indeed this court can know nothing about it. It is beyond the record.

<div style="float:right; text-align:center">THORN<br/>*vs.*<br/>REED</div>

LACY, *Judge*, delivered the opinion of the court:

The assignment of errors presents but two questions for our consideration and decision.

1st, Was there error in the judgment and proceedings of the justices court?

2d, Was the writ of certiorari rightfully issued, and had consequently the circuit court jurisdiction to try the cause.

We will examine and determine the last of these questions first.

By reference to the statute regulating the proceedings in actions of forcible entry and detainer, approved August 19th, 1813, Ark's D. 262, it will be seen that no appeal is allowed from the judgment of the justices, but that the proceedings may be removed by certiorari, into the circuit court holden for the county in which the cause is tried and may be there set aside for irregularity. It is very evident where there is any irregularity in the proceedings of the justices, that the cause may be removed by certiorari, for the words of the act, are express and positive upon the subject, and admit of no doubt or latitude of interpretation. In this case, the certiorari is issued by the clerk under the order and by the direction of the judge of the circuit court in vacation, and it must be conceded that a writ issued by the clerk under the express order, and by the authority of the judge, stands precisely in the same situation as if it was issued by the judge himself.— The record that was produced in the circuit court purports to be a bill of exceptions, filed in the trial before the justices, setting out the proof of the plaintiff's cause of action, which was admitted to go to the jury, and also the testimony offered by the defendant, which was ex-

cluded from their consideration. Although it is called a bill of excep-
tions, and is regularly signed by the justices, still the court can regard
it in no other light, than a mere record of the facts that transpired
during the trial, and as such the transcript was rightfully removed to
the circuit court, but it is not a bill of exceptions according to the legal
definition of that term, for the statute organizing the justices court gives
no authority to take a bill of exceptions to the opinion or judgment of
the justice's court.

The other assignment presents but one question, which is, was the
decision of the Circuit Court right in reversing the judgment of the
justices' court, and remanding the cause to the justices' court, to be
proceeded in according to the instructions there given.  Before enter-
ing into an examination of the question, it is considered necessary
and proper to point out the similarity and difference between an ac-
tion of ejectment, and that of a writ of forcible entry and detainer, as
as regulated by our Statute.  In every complete title to lands, two
things are necessary—the possession or seizin, and the right or title to
the property claimed; or, as Fleta expresses it, the *juris et cesinæ con-
junctio.*  Now, if the possession has been severed from the property, or
the right of possession, the party injured, according to the circumstan-
ces of the case, has an appropriate remedy for the injury sustained.—
The ancient remedy was by a writ of entry or assize, which were ac-
tions merely possessary, only serving to regain the possession whereof
the demandant had been unlawfully disseized by the tenant in pos-
session, and this without any prejudice to the right of ownership in the
soil.  A writ of entry only disproved the title in the tenant, by showing
the unlawful commencement of his possession:  Whereas, an assize
proves the defendant's title, by showing his or his ancestors possession
or title.  To these remedies the writ of ejectment succeeded.  A writ
of *ejectio firmæ*, or an action of trespass in ejectment, lieth on lands or
tenements that are let for a term of years, and afterwards the lessor,
reversioner, remainder man or any stranger, doth eject or oust the lessee
of his term.  3 *Black. Com.* 156.  In this case he shall have his writ
of ejection to call the defendant for entering on the lands so demised
to the plaintiff for a term not yet expired, and ejecting him.

If the ouster was committed by a mere stranger, without any title
to the land, the lessor might anciently by a real action recover posses-
sion of the freehold; but the lessee had no other remedy against the
ejector but in damages, by the writ of ejectment for the trespass com-

LITTLE
ROCK,
Jan'y 1839

THORN
vs.
REED

mitted. And when the courts of equity began to oblige the ejector to make a specific restitution of the lands to the party immediately injured, courts of law also adopted the same method of doing complete justice; and, in the prosecution of the writ of ejectment, introduced a species of remedy not warranted by the original writ, and gave judgment to recover the term, as well as the damages, and issued a writ of possession. This remedy seems to have been settled early in the reign of Edward IV, though it first began to be applied to the principles of trying the title to lands about the time of Henry VII, and since the disuse of real actions, this mode of proceeding has become the usual method of determining the title to lands and tenements. When, therefore, a lessor hath a right of entry into lands, which is wrongfully withheld from him, he makes a formal and fictitious entry on the premises, and, being so in possession, seals and delivers the lease to some third person or lessee; and, having thus given him entry, leaves him in possession of the premises.

The lessee is presumed to stay upon the land till he who held the previous possession, enters and ousts him; and for this injury the lessee is entitled to his action of ejectment against the tenant or casual ejector: and in order to maintain the action the plaintiff, in case any defence is made, must make out his cause by proving title, lease, entry and ouster. First, he must show a good title in the lessee, which brings the matter of right before the court; secondly, that the lessor being seized, did make him the lease for the term; thirdly, that the lessee took possession in consequence of the lease; and lastly, that the defendant ousted or ejected him. And when these facts are proved, he shall have a judgment to recover his term and damages;—and also is entitled to his writ of possession, which the sheriff is bound to execute by delivering him peaceable possession of his term.

This is the regular method of bringing an ejectment in which the title of the lessor comes collaterally and incidentally before the court, in order to show the injury done to the lessee by the ouster committed; and as much trouble and formality were found to attend making actual lease, entry and ouster, and for a more easy and natural method of trying the title by writ of ejectment, where there is an actual tenant in possession, Lord Chief Justice Rolle, during the exile of Charles II, invented a string of legal fictions, which dispensed with the actual lease, entry by the plaintiff, and ouster by the defendant, and required the party, when he entered into the common consent rule on

LITTLE
ROCK,
Jan'y 1839

THORN
vs.
REED
notice from the casual ejector, to admit these three essential requisites to have been complied with, and confined the proof generally to the mere title of the lessor. 2 *Starkie's Ev.* 289; *Morris* vs. *Landrum,* 1 *Dallas,* 67. It was resolved by all the judges in the court of King's Bench, that a writ of ejectment, and the proceedings under it, are judicially to be considered, as the fictitious form of action really brought for the lessor of the plaintiff against the tenant in possession, invented under the control and power of the court, in many respects to force the parties to go to trial upon the merits, without being entangled with the nicety of pleading on either side. It is founded on the same principle as the ancient writ of assize, being calculated to try the mere possessary title to an estate, and has succeeded to those of real actions, because the form of proceeding is entirely a fiction.

It is in the power of the court to direct its application to prevent fraud, and to ascertain the proof of the title. 3 *Black. Com.* 162.

It is true, as contended in argument for the defendant in error, that the action of ejectment is in its nature possessary, and in some instances it may be brought merely for the recovery of the possession; but then, in order to enable a party bringing it to recover, a right of entry or a right of possession, which are convertible, must be proved.

It is an inflexible rule that the lessor or the plaintiff must recover by the strength of his own legal title, and not by the weakness of his adversary's. And that an equitable estate will not enable the plaintiff to support an ejectment at common law; and that the tenant in possession may defeat the lessor's title by showing an outstanding, paramount title in a stranger, or third person. *Robertson* vs. *Campbell,* 3 *Wheat.* 212; *Carson* vs. *Boudinot,* 2 *Wash. C. C. R.* 35; *Adams on Ejectment from page* 294 *to* 315 *and notes;* 1 *P. Williams,* 671.

That the tenant in possession can show his landlord's term has expired, or his right of entry extinguished, is well settled, both upon reason and authority. And although the action is in many respects, and in its nature possessary only, still the right of possession depends on the right of property; and the title of the lessor in general constitutes the main ingredient in the action. The plaintiff has no right to the possession, if he cannot show title in the lessor; for upon proving that fact depends his right of recovery, and consequently his right of possession. He is at liberty in any action at law to show that the interest which the lessor had in the land at the commencement of the tenancy has since expired, " whether by operation of law, by effect of time, or by

his own act." *England* vs. *Slade*, 4 *T. R.* 682; *Doe* vs. *Ransbothane*,
3 *M. & S.* 516; *Adams*, 247.

The principles as laid down by the authorities here cited, are unquestionably true in regard to actions of ejectment. But the enquiry then naturally arises at this stage of the investigation, how far are they applicable to the proceedings in actions of forcible entry and detainer, as regulated by our Statute.

If one turns or keeps another out of possession forcibly, where the latter has title, it is an injury both of a civil and a criminal nature.— The evil was remedied by the Statute of 5th Richard II, *c.* 8, which authorized the party in a peaceable manner to enter upon the land, and reclaim the possession or immediate restitution. The criminal injury or public wrong was punishable with the penalty the law affixed for a breach of the peace.

And by the Statute of 8th Henry VI, *c.* 9, upon complaint made to any justice of the peace for a forcible entry with strong hand, on lands or tenements, or a forcible detainer after peaceable entry, he shall try the truth of the complaint by jury, and, upon force found, shall restore the possession to the party put out. And by 31*st of Elizabeth*, *c.* 11, this mode of redress does not extend to such persons as have continued in peaceable possession after three years or upwards. These several acts form the origin of the present remedy of forcible entry and detainer, as adopted in most of the States of the Union. These acts were passed to prevent individuals from doing themselves right by force, and to protect the persons in the peaceable possession without authority of law. 4 *Black. Com.* 148; 1 *Hank,* 274. The construction of the English Statutes by their courts, and which had been followed by some of the American decisions, confined the remedy to cases where the relater was ousted of his freehold or a term of years, or where he had lawful right to the possession; and the consequence was that in every other instance of forcible entry and detainer, the wrong-doer, though he entered with force and without right, was preferred to the quiet occupant thus dispossessed: for if the former could show on the trial of the cause, that the latter had no estate within perview of the acts, he was entitled to a verdict. These decisions proceed upon the ground, that as the Statute requires an estate in the pemises by express terms; that he who cannot show a right of entry, or a right of possession, cannot maintain the action. For the right of action is only given to the party having a lawful entry or right of possession.

LITTLE
ROCK,
Jan'y 1839

THORN
vs.
REED

Hence it necessarily follows, that any thing that would show the term of the lessor had expired, or had terminated, would defeat the action of forcible entry and detainer. And in this instance it is like the writ of ejectment. In the actions under the English practice, it was necessary to show or prove title to enable the plaintiff to recover the possession. But our Statute is essentially different in this particular. After pointing out the manner of proceeding in the case, the act declares, among other things, "when any person shall wilfully, and without force, hold over any lands, tenements, or other possession, after the determination of the time for which they were demised or let to him, or the person under whom he claims; or when any person wrongfully and without force by disseizin shall obtain and continue in possession of any lands, tenements, or other possessions, and after demand made in writing for the delivery thereof by the person having the legal right to such possession, his agent or attorney shall refuse or neglect to quit such possession, upon complaint thereof in writing to two *justices of the peace*, as aforesaid, the said justices shall proceed to hear and determine the same in like manner as in cases of forcible entry and detainer, and issue a writ of restitution accordingly." See *Arkansas Dig. p.* 262, *sec.* 7. By a careful examination of the section, it will be seen that it embracess classes of cases, which are wholly distinct and independent of each other, and to which the remedy applied is essentially different in every important particular. The latter clause of the section has exclusive reference to cases where the defendant or tenant in possession has entered by disseizin, and in such cases, if he hold over, notice must be given by him to quit; and the action of forcible entry and detainer cannot be maintained unless the plaintiff has a legal right to the possession. This right of action is made to depend by the Statute upon his legal interest, and unless he can establish that fact, he has no right to the possession. And consequently, if the defendant can show that the term of the demise has expired before the commencement of the suit, or that the plaintiff never had any lawful right to the possession, it will form a complete bar to the action. It is perfectly competent for the defendant to traverse the plaintiff's right to the possession; and if, on the trial he disproves it, he of course destroys the lawfulness of his possession, or his right of entry. The writ of restitution is given by the Statute on the express condition of the right of property or possession, and if this right is not proved by the plaintiff, he cannot be invested with the possession. In this respect,

our Statute coincides with the rule of the common law in like cases, and also with the acts of many of our sister States on the subject.— The principle upon which the rule is founded is this: that the disseizor acquired by his disseizin a lawful possession, which the rule will not permit to be interrupted or overthrown, unless the party claiming possession can show he is rightfully entitled to it.

The first part of this clause of the seventh section applies solely and exclusively to persons, who without force wilfully held over any land, tenements, or other possession, after the term for which they were leased or let to them, has expired. This is the case where a tenant comes lawfully and peaceably into possession by lease or otherwise, and then refuses to deliver it up according to the terms or effect of the lease or agreement. In such a case, the Statute does not contemplate that the plaintiff shall show any title whatever; for the right to the possession does not collaterally or incidentally come into question.— The only matter of controversy between the parties is, to whom does the possession properly belong? It is not a trial as to the right of property, or right of entry, but is merely as to the possession; and if the plaintiff show the possession to be his, though the right of possession may be in one person, and the right of property in another, still he is entitled to a verdict, and to have his writ of restitution; for it is the possession he claims, and it was that the defendant agreed to surrender to him on the expiration of the lease. There are no words or terms in the act showing the plaintiff must prove an estate in the premises; but, on the contrary, the Statute both by express language, and by reasonable intendment, clearly indicates that possession alone, in the absence of all right, will entitle a party to maintain an action of forcible entry and detainer when there is a wilful holding over by the tenant who entered peaceably, and by virtue of a lease or agreement, into the land. A party peaceably in the possession at the time of the forcible entry, or in the constructive possession at the time of holding over, is entitled to proceed under the Statute in an action of forcible entry and detainer, although he is neither owner of a freehold, or possessed of a term of years, or has any lawful right of entry to the land.

The title of the land is not in issue where there is an unlawful holding over by a tenant put in possession by his landlord. This rule is founded both on policy and justice, and is sustained by the highest authority. The tenant who is put in possession, is estopped by his own act or deed from denying the landlord's title; for by accepting the

lease or deed, he has admitted it, and it does not afterwards lay open to say the lessor had no title. For if the law permitted him to do so, the tenant might perpetrate a fraud in first obtaining the possession, and in afterwards transferring to another, to the prejudice of the rightful owner; for a mortgagor will not be allowed to question his own title at the time of the mortgage. In legal contemplation there is but one possession, which continues during the entire term, and which is the possession of the landlord, and that the tenant cannot be permitted to deny; for, by accepting the possession, he has estopped himself from that right. If these positions be true, and that they are seems self-evident to the court, then it necessarily follows that the decision of the Justices' Court, in excluding the defendant's testimony from the jury that went to show that the plaintiff had no right or title to the lots in question, was correct; and consequently the judgment improperly refused by the Circuit Court. The plaintiff proved on the trial that the defendant acknowledged his title to the property and his right of possession by a covenant, regularly executed between the parties, in which the defendant bound himself to give up and surrender the possession to the plaintiff by the 10th day of October, 1837; and that after his lease had expired, he wilfully held over the possession, and refused to surrender it up according to his agreement. This was all that was necessary for the plaintiff to prove, and when he had established the fact, the defendant was his tenant under a written agreement or covenant, his right of action accrued, and on the trial of the forcible entry and detainer, it was not competent for the defendant to give any testimony whatever in impeaching his title; for, by his own act, he was estopped from so doing.

The opinion of the Circuit Court is manifestly erroneous, not only in setting aside the judgment of the Justices' Court, but also in remanding the cause to be proceeded in according to law in that court.

The Circuit Court professes no power or authority to make such an order, and of course the entry was null and void. For the Justices' Court was dissolved after they had tried the cause and awarded the writ of restitution. It was a court of peculiar jurisdiction conceived for a special and given purpose; and when that object has been accomplished, the commissions of the justices, by their own limitation, expired. The judgment of the Circuit Court must, therefore, be reversed with costs, the cause remanded to be proceeded in according to law, which is, that the judgment of the Justices' Court be affirmed with costs.